IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DIVERSIFIED INDUSTRIES, INC.,

Plaintiff,

v.

VINYL TRENDS, INC., et al.,

Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-6194 (JBS/JS)

**OPINION**

APPEARANCES:

Kerri E. Chewning, Esq.
ARCHER & GREINER, PC
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Attorney for Plaintiff Diversified Industries, Inc.

Gregg S. Kahn, Esq.
WILSON ELSER
33 Washington Street
Newark, NJ 07102
    Attorney for Defendants Vinyl Trends, Inc. and William
    Vance Hardin

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

This matter comes before the Court on Plaintiff Diversified

Industries, Inc.'s motion to dismiss Defendant Vinyl Trends,

Inc.'s counter-claims for tortious interference with a

prospective or existing economic relationship, unfair

competition, and misappropriation of trade secrets [Docket Item

12] and Defendant's cross-motion for leave to file an amended counter-claim [Docket Item 17.]

Because Plaintiff has had an opportunity to address Defendant's cross-motion to amend in its reply brief and at oral argument, and in the interest of efficiency, the Court will consider the merits of both motions.[1] For the reasons discussed below, the Court will grant Defendant's cross-motion to amend and grant in part and deny in part Plaintiff's motion to dismiss.

## II.  BACKGROUND

### A. Factual Background

The facts set forth below are those alleged in Defendant's "First Amended Answer to Complaint and Counterclaim" which the Court accepts as true for purposes of the instant motions.[2] Defendant Vinyl Trends, Inc. is in the business of manufacturing and selling flooring products, including foam products for use

---

[1] Plaintiff argues that Defendant's original counter-claim should be considered the operative pleading for the purposes of its motion to dismiss because the Court has not yet granted Defendant leave to amend its counter-claim and thus, the original counter-claim has not been superseded. However, nothing in West Run Student Hous. Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165 (3d Cir. 2013), cited by Plaintiff, prevents the Court from considering Defendant's amended counter-claim as the operative complaint, and the Court elects to do so in the interest of judicial economy and in the absence of prejudice to Plaintiff.

[2] Defendants' First Amended Answer to Complaint and Counterclaim is attached to Defendants' opposition brief to Plaintiff's motion to dismiss. [Docket Item 17-1.]

as underlayment for flooring. (Amended Answer and Counterclaim ("Am. Ans.") [Docket Item 17-1] ¶ 9.) The products manufactured and sold by Defendant include the Eternity and Eternity SG products. (Id. ¶ 10.) Defendant and Plaintiff, Diversified Industries, Inc., are competitors in the flooring underlayment market, and Plaintiff sells the FloorMuffler product which competes with Defendant's Eternity and Eternity SG products. (Id. ¶¶ 13, 15.)

Defendant's counter-claim alleges that Defendant and Plaintiff use the same foam supplier, Toray Plastics ("Toray"), which has allowed Plaintiff to obtain information about Defendant's Eternity and Eternity SG products. (Id. ¶ 17.) Plaintiff has obtained information from Toray concerning the sound rating and volatile organic compound ("VOC") content of Defendant's Eternity and Eternity SG products, as well as information concerning other product specifications, development, marketing, and sale of Defendant's Eternity and Eternity SG products.[3] (Id. ¶ 18.) The information Plaintiff has obtained from Toray is confidential, non-public, and provided to Toray in furtherance of Defendant's relationship with Toray. (Id. ¶ 19.) Plaintiff has used and continues to use this

---

[3] Defendant concedes that "Vinyl Trends does not yet know for sure what information Diversified Industries obtained from Toray Plastics (because Diversified Industries has not disclosed such)." (Id. ¶ 18.)

3

information to gain an unfair competitive advantage over Defendant in the marketplace. (Id. ¶ 20.)

Defendant alleges it has suffered actual losses in the form of lower sales of its Eternity and Eternity SG products as a direct consequence of Plaintiff's conduct, and Plaintiff has been unjustly enriched. (Id. ¶ 21.) Plaintiff has used and will continue to use wrongfully obtained information to gain an unfair competitive advantage of Defendant through its marketing materials and in its communications with actual and prospective customers. (Id.)

Plaintiff has also allegedly interfered with Defendant's business relationships with its manufacturers, Toray and Sekisui Voltek ("Voltek"). (Id. ¶ 22.) Plaintiff first interfered with Defendant's relationship with Toray in or around 2007 when Plaintiff made false statements about Defendant's products and product specifications/characteristics in an effort to wrongfully induce Toray to stop doing business with Defendant. (Id.) As a result, Defendant's development and sale of its products were significantly delayed, causing Defendant to suffer lost sales and revenue. (Id.) Defendant did not resume doing business with Toray until 2012. (Id.)

Because Toray supplied Plaintiff with a similar product, Defendant engaged Voltek to design a separate luxury vinyl tile ("LVT") underlayment product which Defendant marketed and sold

4

under its Easy Step and Eternity brands. (Id. ¶ 23.) After
expending considerable effort and money developing and marketing
the products supplied by Voltek, one or more of Plaintiff's
employees or agents around April or May 2013 allegedly made
false statements about Defendant's products to Voltek including
statements concerning the sound rating, VOC content, and other
product specifications of Defendant's products, in order to
induce Voltek to stop doing business with Defendant. (Id. ¶ 24.)
Plaintiff's actions caused Voltek to stop supplying additional
LVT underlayment product after an initial amount, which was
insufficient to satisfy orders Defendant was already obligated
to provide to customers. (Id. ¶ 25.) Defendant allegedly
suffered monetary damages because Defendant was forced to spend
significant time and resources communicating with Voltek and
alternate suppliers to ensure existing orders were timely
completed. (Id.)

Additionally, the counter-claim alleges one or more of
Plaintiff's employees, agents, or representatives, have made
false or misleading statements on its website or in its
marketing materials regarding the flooring underlayment products
offered by Plaintiff and Defendant in an effort to gain an
unfair competitive advantage over Defendant, including
statements concerning Plaintiff's products' sound rating and/or
acoustic barrier, statements concerning Defendant's products'

purple and/or red color, statements concerning Defendant's tapper displays, and statements concerning Plaintiff's patent on cross link polypropylene foam product. (Id. ¶ 26.) Specifically, Plaintiff falsely states in its marketing materials that its FloorMuffler product has "[t]he highest rated and most effective acoustic barrier on the market." (Id. ¶ 27.) Plaintiff in its marketing materials warns against being "fooled by the color. Be sure to look for The FloorMuffler logo. Or you could end up seeing red."[4] (Id.) Plaintiff falsely claims that it is the creator or inventor of the tapper unit and has sent Defendant a cease and desist letter demanding that Defendant stop using it. (Id.)

**B. Procedural Background**

On October 18, 2013, Plaintiff filed a complaint against Defendants Vinyl Trends, Inc. and its employee, William Vance Hardin. [Docket Item 1.] Plaintiff's Complaint asserts claims for tortious interference with contractual relations or prospective economic advantage, as well as for violations Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and New Jersey's Fair Trade Act, N.J.S.A. § 56:4-1. On December 12, 2013, Defendants filed an answer denying the allegations in

---

[4] Defendant contends that this is an "obvious and belittling reference to Vinyl Trends' products (i.e., Vinyl Trends' Easy Step product is red and its Eternity products are purple in color)." (Id. ¶ 27.)

Plaintiff's Complaint and asserting Defendant Vinyl Trends,

Inc.'s counter-claims against Plaintiff for tortious

interference with a prospective or existing economic

relationship, unfair competition, and misappropriation of trade

secrets. [Docket Item 9.] Plaintiff then filed the instant

motion to dismiss Defendant's counter-claims on January 6, 2014.

[Docket Item 12.] In response, Defendant filed opposition to

Plaintiff's motion to dismiss, as well as a cross-motion for

leave to file an amended counter-claim. [Docket Item 17.]

## III. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be

granted only if, accepting all well-pleaded allegations in the

complaint as true and viewing them in the light most favorable

to the plaintiff, a court concludes that plaintiff failed to set

forth fair notice of what the claim is and the grounds upon

which it rests that make such a claim plausible on its face.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although a

court must accept as true all factual allegations in a

complaint, that tenet is "inapplicable to legal conclusions,"

and "[a] pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will

not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

If a responsive pleading has been served, "a party may

amend its pleading only with the opposing party's written

consent or the court's leave." Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Id. The decision to grant leave to amend a complaint rests within the sound discretion of the trial court. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile. Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). In assessing "futility," the court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.

## IV. DISCUSSION

Plaintiff argues that Defendant's original and amended counter-claims should be dismissed for failure to state a claim because Defendant's allegations amount to a bare recitation of the elements of the purported claims. The Court will address each of Defendant's counter-claims in turn.

### A. Tortious Interference with a Prospective or Existing Economic Relationship

Plaintiff argues that Defendant's counter-claim fails to identify any relationships with customers or potential customers

which were interfered with by Plaintiff and fails to identify
any damage to Defendant as a result of the alleged interference.
Further, Plaintiff contends that Defendant fails to identify the
incorrect, misleading, or false statements made by Plaintiff. To
the extent Defendant's tortious interference claim is based on
Defendant's relationship with Toray, Plaintiff argues that it is
barred by the applicable statute of limitations.

Defendant responds that it has sufficiently pleaded a claim
for tortious interference with a prospective or existing
economic relationship based on allegations that Plaintiff, in
bad faith and for no legitimate business purpose, has made false
statements about Defendant's products to manufacturers including
Toray and Voltek, as well as false or misleading statements on
its website, in its marketing materials, and to current or
prospective customers of Defendant to gain an unfair competitive
advantage over Defendant.

Under New Jersey law in order to bring a claim of tortious
interference with a prospective or existing economic
relationship, a plaintiff must show: (1) a plaintiff's existing
or reasonable expectation of economic benefit or advantage; (2)
the defendant's knowledge of that expectancy; (3) the
defendant's wrongful, intentional interference with that
expectancy; (4) the reasonable probability that the plaintiff
would have received the anticipated economic benefit in the

9

absence of interference; and (5) damages resulting from the
defendant's interference. Lightning Lube, Inc. v. Witco Corp., 4
F.3d 1153, 1167 (3d Cir. 1993) (citing Fineman v. Armstrong
World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992); Printing
Mart–Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J.
1989)).

Defendant's amended counter-claim sufficiently states a
claim for tortious interference as to Defendant's relationship
with Toray and Voltek. Defendant alleges that Defendant had an
existing economic relationship with its manufacturers, Toray and
Voltek (Am. Ans. ¶¶ 22-25); Plaintiff knew of Defendant's
relationship with Toray and Voltek (id. ¶¶ 17, 24); Plaintiff
intentionally made false statements about Defendant to Toray and
Voltek concerning the sound rating, VOC content, and other
specifications/characteristics of Defendant's products (id. ¶¶
22, 24); it was reasonably probable that Defendant would receive
economic benefit from its relationships with Toray and Voltek
without Plaintiff's false statements (id. ¶¶ 22-25); and damages
resulted from Plaintiff's false statements in the form of lost
sales revenue and additional costs (id. ¶¶ 22, 25). Accordingly,
the Court rejects Plaintiff's arguments that Defendant has
failed to identify any relationships which were interfered with
by Plaintiff, failed to identify any damage to Defendant as a

result of the alleged interference, and failed to identify the incorrect, misleading or false statements made by Plaintiff.

Defendant has sufficiently identified the relationships with its manufacturers that were interfered with. Defendant alleges that Plaintiff made false statements to Toray "in order to wrongfully induce Toray Plastics to stop doing business with Vinyl Trends." (Id. ¶ 22.) Defendant also alleges that Plaintiff made false statements about Defendant's products to Voltek "in order to wrongfully induce Sekisui Voltek to stop doing business with Vinyl Trends."[5] (Id. ¶ 24.) Accordingly, Defendant has identified contracts or relationships affected by Plaintiff's allegedly misconduct. Further, Defendant's allegations that Plaintiff made false statements about Defendant's products to Toray and Voltek "concerning the sound rating, VOC content and other product specifications/characteristics of Vinyl Trends' products" are sufficiently specific to put Plaintiff on notice regarding the nature of Plaintiff's allegedly wrongful conduct.[6]

---

[5] The Court does not address Plaintiff's argument that Defendant's counter-claim for tortious interference must fail because efforts to advance one's own interest does not establish the requisite malice or wrongful conduct. Plaintiff acknowledges that Defendant's amended counter-claim is not limited to allegations that Plaintiff acted in pursuit of its own business interest. (Pl. Reply [Docket Item 18] at 3.) As noted above, the Court disagrees with Plaintiff's argument that Defendant's original counter-claim remains the operative pleading for the purposes of the instant motion.

[6] Details about the timing, context and content of the allegedly false statements must be identified in discovery, but they are

(Id.; see also id. ¶ 22.) Accepting Defendant's pleadings as true, Plaintiff's allegedly false statements to Toray and Voltek amount to more than "healthy competition." Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 659 A.2d 904, 933 (N.J. Super. Ct. App. Div. 1995). Instead, Defendant's allegations, if proved, could satisfy the malice requirement because Defendant sufficiently alleges that "the harm was inflicted intentionally and without justification or excuse." Id. (quoting Printing Mart-Morristown, 563 A.2d at 31).

Defendant's amended counter-claim adequately allege damages as the result of Plaintiff's false statements in the form of lost sales revenue and additional costs. Contrary to Plaintiff's position, Defendant need not identify, in the pleadings stage, a specific amount of LVT underlayment Voltek intended to supply Defendant. Defendant alleges that Plaintiff's actions "caused Sekisui Voltek to tell Vinyl Trends that it would not supply additional LVT underlayment product after an initial amount, which amount was far less than the aggregate amount of orders Vinyl Trends already was obligated to provide to customers." (Id. ¶ 25.) Defendant's allegations are clear that it maintained an expectation that Voltek would supply additional LVT underlayment product to satisfy its existing orders. The cases

---

not within the ambit of Rule 9(b), Fed. R. Civ. P., which requires, for example, that the circumstances of an alleged fraud be plead with factual particularity.

cited by Plaintiff support the proposition that interference
with existing business relationships is sufficient to establish
damages in a tortious interference claim, and the claimant need
not show interference with prospective customers. See Lightning
Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1169 (3d Cir. 1993)
(finding sufficient evidence of damages where plaintiff sold
franchises of business, but only a fraction of these franchisees
actually opened as a result of defendant's interference);
Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1172 (N.J.
2001) (upholding grant of summary judgment where defendant
secretly solicited current clients of plaintiff).

However, the Court finds that Defendant's claim for
tortious interference as it relates to Toray is barred by the
statute of limitations. Defendant conceded at oral argument that
the alleged interference between Plaintiff and Toray that forms
the basis of Defendant's claim occurred before December, 2007,
more than six years before Defendant filed its original counter-
claim on December 2, 2013, and a tortious interference claim
under New Jersey law must be asserted within six years. See
Fraser v. Bovino, 721 A.2d 20, 25 (N.J. Super. Ct. App. Div.
1998). Defendant has not alleged in the amended counter-claim
any interference by Plaintiff after December 2, 2007, nor could
Defendant's counsel at oral argument identify any misconduct by
Plaintiff with respect to Toray after December 2, 2007.

13

Therefore, the Court will dismiss without prejudice Defendant's amended counter-claim for tortious interference as it relates to Toray because it is barred by the statute of limitations. See Clark v. Prudential Ins. Co. of Am., 736 F. Supp. 2d 902, 923 (D.N.J. 2010) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)).

   In contrast to Defendant's allegations based on its relationship with Voltek, Defendant's amended counter-claim fails to state a claim for tortious interference as to Defendant's relationship with "actual and prospective customers." (Am. Ans. ¶ 26.) Defendant fails to identify any actual contract or customer affected by Plaintiff's alleged misconduct.[7] See Novartis Pharm. Corp. v. Bausch & Lomb, Inc., Civ. 07-5945 (JAG), 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) ("At the pleading stage, [plaintiff] must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers."); Lucas Indus., Inc. v. Kendiesel, Inc., Civ. 93-4480, 1995 WL 350050, at *9 (D.N.J. June 9, 1995) (granting motion to dismiss where counter-claimant

_____

[7] When asked at oral argument if Defendant could identify any customers by name who were affected by Plaintiff's alleged misconduct, Defendant's counsel identified "T&L Distributors." However, T&L Distributors is not referenced anywhere in Defendant's amended counter-claims. Because the Court's dismissal of Defendant's claim will be without prejudice, Defendant will have an opportunity to plead with specificity the identity of customers who were affected by Plaintiff's alleged misconduct.

failed to identify "a single customer or a single contract that
was likely to consummate, but failed to consummate, due to the
actions taken by" counter-claim defendant). While Defendant need
not identify specific customers by name, Defendant must plead
sufficient facts to put Plaintiff on notice as to the conduct
that allegedly caused harm to Defendant. See Syncsort Inc. v.
Innovative Routines Int'l, Inc., Civ. 04-3623 (WHW), 2005 WL
1076043, at *12 (D.N.J. May 6, 2005) (denying motion to dismiss
claim for tortious interference where counter-claimant alleged
that counter-claim defendant induced prospective customers of
counter-claimant to breach non-disclosure agreements and offered
to provide a customer with a free copy of counter-claim
defendant's product and pay off any debt that customer owed to
counter-claimant).

    Additionally, Defendant fails to identify any damage as the
result of Plaintiff's alleged false statements on its website,
in its marketing materials, and to Defendant's current or
prospective customers. (Am. Ans. ¶ 26.) Defendant's allegations
as to damages consist of the bare conclusions that "Vinyl Trends
has lost revenue and profit – in the form of lost sales and
other business opportunities – as a direct result of Diversified
Industries' false/misleading statements and other wrongful
conduct" and Defendant will continue to lose additional sales,
revenue and profit. (Id. ¶¶ 32-33.) Such conclusions are

insufficient to show that Defendant "had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby."[8] <u>Lamorte Burns & Co., Inc. v. Walters</u>, 770 A.2d 1158, 1170 (N.J. 2001). Accordingly, Defendant cannot maintain a claim that Plaintiff tortiously interfered with Defendant's relationship with unidentified or unknown prospective customers.

Therefore, the Court will deny Plaintiff's motion to dismiss Defendant's tortious interference claim as to Defendant's relationship with Voltek, but grant Plaintiff's motion to dismiss Defendant's tortious interference claim as to Defendant's relationship with Toray and unidentified current or prospective customers without prejudice to Defendant seeking leave to file a Second Amended Counterclaim that cures the noted deficiencies.

**B. Unfair Competition**

Plaintiff argues that Defendant's counter-claim for unfair competition should be dismissed because Defendant concedes that there is no distinct cause of action for unfair competition under New Jersey law, and Defendant asserts no argument for the

---

[8] Having found Defendant's amended counter-claim insufficient to state a claim for tortious interference as to Defendant's current or prospective customers, the Court will not address Plaintiff's arguments that Plaintiff's allegedly false statements were neither false nor incorrect.

viability of an unfair competition claim distinct from its claim for tortious interference. The Court agrees.

"The common law tort of unfair competition historically has been considered a subspecies of the class of torts known as tortious interference with business or contractual relations." Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc., A-3714-07T1, 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010) (citing Restatement (Third) of Unfair Competition § 1 comment g (1995)). Stated differently, under New Jersey law, "[t]here is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." C.R. Bard, Inc. v. Wordtronics Corp., 561 A.2d 694, 696 (N.J. Super. Ct. Ch. Div. 1989). Accordingly, courts have dismissed unfair competition claims where they are duplicative of claims for tortious interference. See Juice Entm't, LLC v. Live Nation Entm't, Inc., Civ. 11-7318 (WHW), 2012 WL 2576284, at *5 (D.N.J. July 3, 2012) (dismissing claims for unfair competition claim as duplicative of plaintiff's tortious interference claims); Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co., 912 F. Supp. 747, 786 (D.N.J. 1995) (dismissing claim for unfair competition where court determined that claims for tortious interference and breach of good faith and fair dealing did not withstand summary judgment); Sussex Commons Outlets, L.L.C., 2010 WL 3772543, at *9-10 (upholding

17

dismissal of unfair competition claim where plaintiff conceded that unfair competition claim was only a subspecies of its tortious interference claim and both claims were grounded on the same facts).

In the present action, Defendant concedes that "[t]he factual basis for the unfair competition claim is the same as for the tortious interference Count." (Def. Opp. [Docket Item 17] at 12.) As such, the Court finds Defendant's unfair competition claim to be duplicative of its tortious interference claim and will grant Plaintiff's motion to dismiss Defendant's counter-claim for unfair competition with prejudice.

### C. Misappropriation of Trade Secrets

Plaintiff argues that Defendant's misappropriation of trade secrets claim must fail because Defendant admits that it does not know what information Plaintiff obtained from Toray. Further, Defendant's amended counter-claim does not allege how Plaintiff misappropriated any information about Defendant's products from Toray or how any information was acquired by improper means. Finally, Plaintiff argues that the use of any information obtained from Toray in instituting this litigation is protected by the litigation privilege.

In response, Defendant clarifies that it is only bringing a claim for misappropriation of trade secrets under the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 et seq. ("the Act").

Defendant contends that it has stated a claim under the Act because Plaintiff, by its own admission, has obtained confidential and proprietary information from Toray about Defendant's Eternity and Eternity SG products, and Plaintiff used and continues to use this information to gain an unfair competitive advantage over Defendant, causing damages to Defendant.[9] Defendant rejects Plaintiff's assertion of litigation privilege because Plaintiff continues to use the confidential and proprietary information to make false statements to the public.

The New Jersey Trade Secrets Act prohibits the actual or threatened misappropriation of a trade secret. N.J. Stat. Ann. § 56:15-3. The Act defines "trade secret" broadly as "information . . . without regard to form" that "derives independent economic value" from not being known to others who can obtain economic value from its disclosure or use and that is the subject of reasonable efforts to maintain its secrecy. Id.; see also StrikeForce Technologies, Inc. v. WhiteSky, Inc., Civ. 13-1895 (SRC), 2013 WL 3508835, at *8 (D.N.J. July 11, 2013). The following acts constitute misappropriation:

---

[9] Defendant relies on Plaintiff's Complaint which states, "Because Diversified and Vinyl Trends use the same foam supplier, Diversified has been able to obtain information about the foam product Vinyl Trends is utilizing for its Eternity products." (Compl. ¶ 40.)

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
(a) used improper means to acquire knowledge of the trade secret; or
(b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
(c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J. Stat. Ann. § 56:15-2. The Act defines "improper means" as "the theft, bribery, misrepresentation, breach or inducement of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret, or espionage through electronic or other means, access that is unauthorized or exceeds the scope of authorization, or other means that violate a person's rights under the laws of this State." Id. "Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." § 56:15-4.

Defendant fails to state a claim for misappropriation of trade secrets under the New Jersey Trade Secrets Act because Defendant fails to identify with any specificity the allegedly misappropriated information, the manner in which it was obtained, or how Defendant was harmed as a result. Defendant

admits in its amended counter-claim that it "does not yet know for sure what information Diversified Industries' obtained from Toray." (Am. Ans. ¶ 18.) Defendant alleges only the following regarding the information obtained: "Vinyl Trends alleges on information and belief – especially in light of Diversified Industries' Complaint allegations – that Diversified Industries has obtained information concerning the sound rating and VOC content of the Eternity and Eternity SG products, and also obtained information concerning other product specifications as well as the development, marketing and sale of the Eternity and Eternity SG products." (Id.) The remaining allegations in support of this claim for misappropriation of trade secrets consist of a bare recitation of the elements required under the Act. Defendant's amended counter-claim contains no factual detail supporting a conclusion that Plaintiff misappropriated any trade secret by improper means as those terms are defined in the Act. Nor has Defendant alleged any facts regarding damages beyond the conclusion that "Vinyl Trends has suffered actual losses as a direct consequence of Diversified Industries' conduct" and "Diversified Industries also has been unjustly enriched." (Id. ¶ 21.) Defendant's amended counter-claim amounts to mere guesswork supported only by bare conclusions based on a single statement in Plaintiff's Complaint. Moreover, Defendant provides no basis on which to find its allegations sufficient to

21

state a claim under the Act. Therefore, the Court will grant Plaintiff's motion to dismiss Defendant's counter-claim for misappropriation of trade secrets under the New Jersey Trade Secrets Act without prejudice.[10]

**V.    CONCLUSION**

For the reasons discussed above, the Court will grant Defendant's cross-motion for leave to file the amended counter-claim attached to its opposition because it states a plausible claim for tortious interference as to Defendant's relationship with Voltek. However, the Court will dismiss without prejudice Defendant's amended counter-claim for tortious interference to the extent it is based on its relationship with Toray because such claim is barred by the statute of limitations. Further, the Court will dismiss without prejudice Defendant's amended counter-claim for tortious interference to the extent it is based on its relationship with current or prospective customers, as well as Defendant's amended counter-claim for

---

[10] The Court has considered Defendant's argument that its New Jersey Trade Secret Act claim should proceed because Defendant has no alternative method to discover the information Plaintiff obtained from Toray as alleged in Paragraph 40 of Plaintiff's Complaint. [Docket Item 1.] However, nothing prevents Defendant from conducting discovery on this allegation in Plaintiff's Complaint, and because dismissal is without prejudice, Defendant may seek leave to reassert its claim under the Act if warranted during the course of discovery, and before the deadline for seeking amendments to pleadings. Because the Court finds that Defendant has failed to state a claim under the Act, the Court does not reach Plaintiff's argument regarding the litigation privilege.

misappropriation of trade secrets under the New Jersey Trade Secrets Act. The Court will dismiss Defendant's amended counter-claim for unfair competition with prejudice. An accompanying Order will be entered.


**May 1, 2014**                         **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge