IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIVERSIFIED INDUSTRIES, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 13-6194 (JBS/JS) |
| VINYL TRENDS, INC., et al. | |
| Defendants. | **OPINION** |

APPEARANCES:

Kerri E. Chewning, Esq.
ARCHER & GREINER, PC
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Attorney for Plaintiff Diversified Industries, Inc.

Gregg S. Kahn, Esq.
WILSON ELSER
33 Washington Street
Newark, NJ 07102
    Attorney for Defendants Vinyl Trends, Inc. and William
    Vance Hardin

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    This matter comes before the Court on Defendant Vinyl Trends, Inc.'s motion for leave to file a Second Amended Answer and Counterclaim, principally to amend its counterclaim for tortious interference with a prospective or existing economic relationship. [Docket Item 26.] Defendant and Plaintiff

Diversified Industries are competitors in the flooring underlayment industry. Defendant alleges that Plaintiff has intentionally and maliciously interfered with Defendant's prospective and existing business relationships by making false statements about Defendant's products to wrongfully induce certain manufacturers and customers to stop doing business with Defendant. Defendant previously asserted a tortious interference counterclaim against Plaintiff, but the Court granted in part and denied in part Plaintiff's motion to dismiss, allowing Defendant's tortious interference counterclaim to proceed only to the extent it is based on Defendant's relationship with Sekisui Voltek.

Accordingly, Defendant now requests leave to file a second amended counterclaim to more specifically identify the prospective and existing suppliers, manufacturers, and customers with whom Plaintiff allegedly interfered.

For the reasons stated below, the Court will grant in part and deny in part Defendant's motion.

**II.   BACKGROUND**

   **A. Facts**

The facts set forth below are those alleged in Defendant's "Second Amended Answer to Complaint and Counterclaim," [Docket Item 26-2], which the Court accepts as true for purposes of the

instant motion.[1] Defendant Vinyl Trends, Inc. ("Vinyl Trends") is a Canadian corporation in the business of manufacturing and selling flooring products in the United States, including foam products for use as underlayment for flooring. (Second Amended Answer and Counterclaim ("Second Am. Ans.") [Docket Item 26-2] ¶¶ 2, 9.) Defendant and Plaintiff, Diversified Industries, Inc. ("Diversified"), are direct competitors in the flooring underlayment market. (Id. ¶ 14.) Defendant's products are marketed as "VOC free" because they are considered free of volatile organic compounds pursuant to applicable rulings and regulations. (Id. ¶ 11.)

Defendant's Second Amended Counterclaim alleges that Plaintiff tortiously interfered with Defendant's prospective and existing business relationships with suppliers Muchsee Wood Co. Ltd. ("Muchsee"), Toray Plastics, Inc. ("Toray"), and Sekisui Voltek ("Voltek"), as well as customers T&L Distributing ("T&L"), CMH Space ("CMH"), and Home Depot. (Id. ¶¶ 18, 25.) Specifically, Defendant alleges that one or more of Plaintiff's employees has made false statements of fact about Defendant and its products to these named suppliers, manufacturers, and customers, including the following:

---

[1] Defendants' Second Amended Answer to Complaint and Counterclaim is attached to Defendant's motion for leave to file same. [Docket Item 26-1.]

> (i) Vinyl Trends products are 'B' quality, seconds or scrap; (ii) zero VOC [volatile organic compounds] is a scam; (iii) Vinyl Trends makes its products in a shed or owner's garage; (iv) Vinyl Trends delivers its products out of the back of a pickup truck; and (v) Vinyl Trends is not authorized to sell in the United States.

(Id. ¶ 12.) Defendant claims it had a reasonable expectation of doing business with the above-named suppliers and customers, and that Plaintiff intentionally and maliciously interfered with these relationships to divert business away from Defendant. (Id. ¶¶ 32-33.) Defendant claims monetary damages in the form of lost revenue and profit, lost sales and other business opportunities, and unnecessary incurred costs as a result of Plaintiff's false and misleading statements. (Id. ¶ 36.)

As to Plaintiff's alleged interference with Defendant's prospective relationship with Muchsee, Defendant alleges that in 2010, while Defendant was "in discussions" with Muchsee regarding a potential supply contract, Plaintiff entered into a contract with Muchsee solely to eliminate its competitors from dealing with Muchsee and, in effect, to prevent Muchsee from doing business with Defendant. (Id. ¶ 19.) Additionally, Defendant alleges that Plaintiff made false statements of fact about Defendant's products to Muchsee, "including statements concerning the sound rating, VOC content and other product specifications/characteristics of Vinyl Trends' products," in an

4

effort to wrongfully induce Muchsee to not do business with Defendant. (Id. ¶ 20.)

Defendant makes similar allegations with regard to Plaintiff's interference with Defendant's existing business relationship with Toray.[2] (Id. ¶ 21.) Defendant alleges that in 2013, Defendant received calls "on a regular basis" from one or more Toray representatives maintaining that a representative of Plaintiff was making false statements about Defendant's products to Toray, "including statements concerning the sound rating, VOC content and other product specifications/characteristics of Vinyl Trends' products," in order to wrongfully induce Toray to stop doing business with Defendant. (Id.) Defendant continues to use Toray as a manufacturer for its products, however Defendant alleges it incurred unnecessary costs in correcting the false statements made by Plaintiff "in the form of employees having to spend unnecessary time on Toray Plastics issues that could have been spent on other company business." (Id.)

Defendant next alleges that Plaintiff tortiously interfered with Defendant's existing relationship with Voltek, a

---

[2] The Court previously dismissed Defendant's claim for tortious interference in its First Amended Answer and Counterclaim as it related to Toray because it was barred by the six-year statute of limitations for asserting a tortious interference claim under New Jersey law. Diversified Indus., Inc. v. Vinyl Trends, Inc., Civ. 13-6194 (JBS), 2014 WL 1767471, at *5 (D.N.J. May 1, 2014). However, in Defendant's Second Amended Answer, Defendant includes new allegations as to Toray that are within the applicable six-year limitations period.

manufacturer who designed and supplied for Defendant an exclusive LVT (luxury vinyl tile) underlayment product. (Id. ¶ 22.) Defendant spent considerable time developing, testing, and marketing this product, generating numerous sales orders from customers. (Id.) Defendant alleges that Plaintiff, who knew of Defendant's existing relationship with Voltek, told Voltek "in or prior to April-May 2013" not to make the LVT underlayment product for Defendant, and, furthermore, made the same false statements of fact to Voltek concerning Defendant's products that Plaintiff allegedly made to Muchsee and Toray. (Id. ¶ 23.) Defendant claims that Plaintiff's actions caused Voltek to tell Defendant "that it would not supply additional, LVT underlayment product after an initial amount, which amount was far less than the aggregate amount of orders that Vinyl Trends already was obligated to provide to customers." (Id. ¶ 24.) As a result, Defendant claims it suffered monetary damages by spending significant time and effort negotiating with Voltek, communicating with alternate suppliers, and transferring orders placed with Voltek to other suppliers so that it could honor its obligations to its customers. (Id.) Defendant attributes the loss of its customer T&L Distributing to Plaintiff's interference with Defendant's relationship with Voltek, alleging that T&L told Defendant "the reason why Vinyl Trends lost the T&L Distributing account was because Vinyl Trends was slow

6

coming out with its LVT underlayment product . . . and T&L Distributing went in a different direction as a result." (Id. ¶ 26.)

Defendant further alleges that Plaintiff tortiously interfered with Defendant's relationship with CMH Space, Defendant's biggest customer, by spreading false and misleading information to CMH concerning the subject matter of the present litigation. (Id. ¶ 28.) While Defendant continues to do business with CMH, Defendant claims it suffered monetary damages because it had to spend significant time and costs correcting the false statements made by Plaintiff. (Id. ¶ 30.)

Lastly, Defendant alleges tortious interference as to its prospective relationship with Home Depot. (Id. ¶ 31.) In 2012, Defendant and Home Depot were "in discussions" regarding the sale of Defendant's products in Home Depot stores. (Id.) Defendant claims that the discussions "progressed to a point then suddenly and mysteriously stopped." (Id.) Defendant later learned that Home Depot instead placed its business with Plaintiff. (Id.) Defendant alleges that Plaintiff made false statements of fact about Defendant's products to Home Depot, "including statements concerning the sound rating, VOC content and other product specifications/characteristics of Vinyl Trends' products," in order to wrongfully induce Home Depot not

7

to do business with Defendant and do business with Plaintiff instead. (Id.)

**B. Procedural background**

On October 18, 2013, Plaintiff filed a Complaint against Defendants Vinyl Trends, Inc. and its employee, William Vance Hardin, asserting claims for tortious interference with contractual relations or prospective economic advantage, as well as for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New Jersey's Fair Trade Act, N.J.S.A. § 56:4-1. [Docket Item 1.] On December 2, 2013, Defendant filed an answer denying the allegations in Plaintiff's Complaint and asserting Defendant Vinyl Trends' counterclaims against Plaintiff for tortious interference with a prospective or existing economic relationship, unfair competition, and misappropriation of trade secrets. [Docket Item 9.]

Plaintiff then filed a motion to dismiss Defendant's counterclaims [Docket Item 12], which the Court granted in part and denied in part. [Docket Items 23, 24.] The Court found that Defendant's First Amended Answer and Counterclaim, submitted as a cross-motion to amend [Docket Item 17], stated a plausible claim for tortious interference as to its relationship with Voltek. Diversified Indus., 2014 WL 1767471, at *4. However, the Court dismissed without prejudice Defendant's amended counterclaim for tortious interference as to its relationship

with Toray because such claim was barred by the statute of limitations. Id. at \*5-6. Further, the Court dismissed without prejudice Defendant's amended counterclaim for tortious interference as to its relationship with current or prospective customers, as well as Defendant's amended counterclaim for misappropriation of trade secrets. Id. The Court dismissed Defendant's amended counterclaim for unfair competition with prejudice. Id.

On May 15, 2014, Plaintiff filed an Answer to Defendant's counterclaims. [Docket Item 25.] On June 2, 2014, Defendant filed the instant motion seeking leave to file a second amended answer and counterclaim [Docket Item 26], which Plaintiff opposes [Docket Item 27.] The Court heard oral argument on August 19, 2014.

**III. STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given, but "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could

be granted." Id. "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id.

Under the Rule 12(b)(6) standard, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted).

Where, as here, a Defendant seeks leave to amend its counterclaim, the Court will analyze the legal sufficiency of the counterclaim under the same "plausibility" pleading standard as used to determine the sufficiency of a complaint.

**IV. DISCUSSION**

Plaintiff acknowledges that the majority of Defendant's counterclaim contains sufficient factual allegations to state a plausible claim, and accordingly, does not oppose the filing of Defendant's proposed Second Amended Answer and Counterclaim. However, Plaintiff opposes the inclusion of Defendant's allegations for tortious interference as to Defendant's relationships with Toray and Home Depot, which Plaintiff contends fail to state a claim. Therefore, the Court will assess the plausibility of Defendant's counterclaim as to Toray and Home Depot only.

Plaintiff argues that Defendant fails to identify any actual interference with Defendant's relationship with Toray attributable to Plaintiff and fails to identify any damage to Defendant as a result of the alleged interference. Further, Plaintiff contends that Defendant fails to identify any false statements or misrepresentations made by Plaintiff. To the extent Defendant's tortious interference claim is based on Defendant's relationship with Home Depot, Plaintiff argues that Defendant's claim is not plausible because Defendant fails to allege that it had a reasonable expectation of doing business with Home Depot and fails to identify any false statements made by Plaintiff.

11

Defendant responds that it has sufficiently pleaded a claim for tortious interference as to its relationships with both Toray and Home Depot based on allegations that Plaintiff has made false statements about Defendant's products to these entities in order to gain an unfair competitive advantage over Defendant. Defendant alleges it has suffered damages in the form of incurring unnecessary costs having to correct the false statements made by Plaintiff, as well as lost sales, revenue, and profit. Further, Defendant refutes Plaintiff's argument that Defendant had no reasonable expectation of doing business with Home Depot.

Under New Jersey law, to bring a claim of tortious interference with a prospective or existing economic relationship, a plaintiff must show: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992); Printing

Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751 (1989)).

As to Plaintiff's alleged interference with Defendant's relationship with Toray, Defendant alleges that it had an existing economic relationship with Toray (Second Am. Ans. ¶¶ 21-22); Plaintiff knew of Defendant's relationship with Toray (id. ¶ 21); and Plaintiff intentionally made false statements about Defendant to Toray concerning the sound rating, VOC content, and other specifications/characteristics of Defendant's products (id.). Accordingly, the Court rejects Plaintiff's arguments that Defendant has failed to identify any actual interference with Defendant's relationship with Toray and failed to identify any false statements or misrepresentations made by Plaintiff.[3]

However, Defendant's second amended counterclaim fails to sufficiently state a tortious interference claim as to Defendant's relationship with Toray because Defendant fails to identify any actual damage or loss of anticipated economic benefit resulting from Plaintiff's alleged interference. A tortious interference claim must contain "allegations of fact

---

[3] Further, the Court previously found, on nearly identical allegations, that Defendant had identified allegedly false statements made by Plaintiff and that these statements were sufficient to plead the "wrongful, intentional interference" element of a tortious interference claim. Diversified Indus., 2014 WL 1767471, at *4.

giving rise to some reasonable expectation of economic advantage." <u>Soldinger v. Football Univ., LLC</u>, No. L-2870-11, 2014 WL 2178465, at *3 (N.J. Super. Ct. App. Div. May 27, 2014) (quoting <u>Printing Mart</u>, 116 N.J. at 751-52). "A plaintiff must show that if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." <u>Id.</u> In other words, a tortious interference claim must "allege facts leading to the conclusion that the interference caused the loss of the prospective gain." <u>Id.</u>

Defendant's amended counterclaim alleges that it continues to conduct business with Toray despite Plaintiff's alleged interference, but that it "incurred unnecessary costs having to correct the false statements made by Diversified Industries, in the form of employees having to spend unnecessary time on Toray Plastics issues that could have been spent on other company business." (Second Am. Ans. ¶ 21.) Because Defendant continues to receive the anticipated economic benefits of conducting business with Toray, Defendant has not alleged that Plaintiff's interference caused the loss of any prospective economic gain. <u>Compare</u> <u>Norwood Easthill Assocs. v. Norwood Easthill Watch</u>, 222 N.J. Super. 378, 385 (App. Div. 1988) (holding that plaintiff-developers failed to show actual damage to their settlement negotiations with borough officials where defendant citizens

group and its members allegedly threatened to initiate an IRS audit against borough officials, but settlement agreement between borough and developers remained unaffected), with Printing Mart, 116 N.J. at 760 (holding that plaintiff's complaint alleged actual damages because it asserted that plaintiff lost anticipated economic gain as a result of defendant's interference). On the face of Defendant's pleading, Defendant states that its relationship with Toray was unaffected by any alleged interference by Plaintiff, and Defendant's counsel at oral argument stated unequivocally that Defendant does not allege any lost profits or lost business as a result of Plaintiff's alleged interference with Toray. Moreover, the consequential damages sought by Defendant are not the type of lost prospective gain necessary to state a claim for tortious inference. Defendant has identified no authority which would permit recovery for reputational harm and time diverted from ordinary business where there is no allegation of lost profit or economic gain. Conclusory allegations of lost profit elsewhere in the Amended Answer are bare conclusions unworthy of the Court's consideration. Accordingly, the Court finds that Defendant failed to sufficiently plead damages to state a claim for tortious interference as to Defendant's relationship with Toray.

In contrast to Defendant's allegations based on its relationship with Toray, Defendant's amended counterclaim sufficiently states a claim for tortious interference as to Defendant's relationship with Home Depot. Defendant alleges that it had a reasonable expectation of an economic relationship with Home Depot; Plaintiff knew of Defendant's expected relationship with Home Depot; Plaintiff intentionally made false statements about Defendant to Home Depot concerning the sound rating, VOC content, and other specifications/characteristics of Defendant's products; it was reasonably probable that Defendant would receive economic benefit from its expected relationship with Home Depot without Plaintiff's false statements; and damages resulted from Plaintiff's false statements in the form of lost sales, revenue, and profit. (Second Am. Ans. ¶ 31.) Thus, the Court rejects Plaintiff's argument that Defendant fails to allege that it lost actual anticipated business from Home Depot and fails to identify misleading or false statements made by Plaintiff.[4]

Defendant has sufficiently alleged that it had a reasonable expectation of economic benefit from its prospective

---

[4] As discussed above, the Court previously found, on nearly identical allegations, that Defendant had identified allegedly false statements made by Plaintiff concerning the sound rating, VOC content, and other specifications/characteristics of Defendant's products. <u>Diversified Indus.</u>, 2014 WL 1767471, at *4.

relationship with Home Depot and that absent Plaintiff's interference, it was reasonably probable Defendant would have received such benefit. Defendant alleges that it was "in discussions with a prospective customer, Home Depot, so Home Depot could sell Vinyl Trends' products in its stores." (Second Am. Ans. ¶ 31.) Defendant also alleges that Plaintiff made false statements "concerning the sound rating, VOC content and other product specifications/characteristics of Vinyl Trends' products — to Home Depot in order to wrongfully induce Home Depot to not do business with Vinyl Trends and do business with plaintiff instead . . . ." (Id.) After the discussions "suddenly and mysteriously stopped," Defendant learned that Home Depot placed its business with Plaintiff. (Id.) In its reply brief, Defendant presents additional factual allegations concerning its prospective relationship with Home Depot and explains that "Vinyl Trends presented its products to Home Depot through another company, Nance Carpet, who has significant dealings with Home Depot." (Def. Reply [Docket Item 30] at 7 n.1.) These discussions "got to the point where the parties were discussing doing a trial whereby Home Depot would sell Vinyl Trends' products at several of its stores." (Id.) Defendant's counsel represented at oral argument that his client furnished the basis

17

for these allegations, and he would include these allegations in a third amended counterclaim if necessary.[5]

Contrary to Plaintiff's position, these allegations are sufficient to establish the "reasonable expectation" element of a tortious interference claim. "A complaint of tortious interference must allege 'facts that show some protectable right—a prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some reasonable expectation of economic advantage.'" Soldinger, 2014 WL 2178465 at *3 (quoting Printing Mart 116 N.J. at 751-52). Importantly, "[a] complaint must demonstrate that a plaintiff was in 'pursuit' of business." Id. Here, Defendant's allegation that it was "in discussions" with Home Depot so that "Home Depot could sell Vinyl Trends' products in its stores" demonstrates that Defendant was in "pursuit" of Home Depot's business.

Nonetheless, Plaintiff argues that Defendant's allegations "fail[] to identify who at Diversified made undefined statements, to whom, and when," and therefore, Defendant's tortious interference claim as to its relationship with Home Depot must fail. (Pl. Opp. at 8.) Under Rule 12(b)(6), "[a]

---

[5] Given counsel's representation at oral argument, the Court finds no need to require a third amended pleading.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Details about the timing, context, and content of the allegedly false statements must be identified in discovery. For the purposes of alleging sufficient facts to plead a plausible claim for relief, Defendant has met its burden. Accordingly, the Court finds Defendant's allegations as to Plaintiff's interference with Defendant's relationship with Home Depot sufficient to establish a tortious interference claim.

**V.   CONCLUSION**

In light of the foregoing, the Court will grant Defendant's motion for leave to file a Second Amended Answer and Counterclaim for tortious interference as to Defendant's relationships with Muchsee, Voltek, T&L, CMH, and Home Depot, but deny Defendant's motion for leave to file a Second Amended Answer and Counterclaim for tortious interference as to Defendant's relationship with Toray. An accompanying Order will be entered.


 **August 21, 2014**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge