IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIVERSIFIED INDUSTRIES, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 13-6194 (JBS/JS) |
| VINYL TRENDS, INC., et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Kerri E. Chewning, Esq.
ARCHER & GREINER, PC
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Attorney for Plaintiff Diversified Industries, Inc.

Gregg S. Kahn, Esq.
WILSON ELSER
33 Washington Street
Newark, NJ 07102
    Attorney for Defendants Vinyl Trends, Inc. and William
    Vance Hardin

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court on Defendant Vinyl

Trends, Inc.'s motion for summary judgment [Docket Item 70] and

Plaintiff Diversified Industries, Inc.'s motion for summary

judgment on Defendant's third amended counterclaim and unclean

hands defense. [Docket Item 71.] Also pending before the Court

are two motions to seal briefing materials filed by Plaintiff. [Docket Items 74 & 82.] For the reasons that follow, the Court will deny Defendants' motion for summary judgment, grant in part and deny in part Plaintiff's motion for summary judgment, and grant in part and deny in part Plaintiff's motions to seal.

## II.   BACKGROUND[1]

### A. Factual Background

Plaintiff Diversified Industries and Defendant Vinyl Trends are competitors in the flooring underlayment industry. Diversified Foam Products, Inc., a division of Plaintiff Diversified Industries, Inc., manufactures, advertises, and sells a foam product called the "FloorMuffler" for use as underlayment below laminate, engineered, hardwood, tile, and plank flooring. (Certification of Craig Keane ("Keane Cert.") [Docket Item 71-1 & 72-1] ¶¶ 2-7.) Defendant Vinyl Trends produces two similar products called "Eternity" and "Eternity SG," which are apparently designed to compete with the FloorMuffler. (Id. ¶ 13.)

Central to the parties' dispute are various representations each party makes about their respective products and company in their marketing materials, which each party asserts constitute

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts (which were well-prepared under L. Civ. R. 56.1), affidavits, and exhibits accompanying both pending motions for summary judgment.

unfair competition or an attempt to interfere with its contracts on the part of its opponent. First, the parties dispute whether the Eternity products are "VOC free." According to Plaintiff, while Defendants' website proclaims that the Eternity products have "No Volatile Organic Compound emissions" (see Complaint Ex. A), Defendants did not do their own VOC testing on the Eternity products and the Eternity products may in fact contain VOC's. (See Deposition of Robert Kuepfer ("Kuepfer Dep.") [Docket Item 80-3] at 59:8-18, 67:22-68:8, 152:22-153:14; see also Deposition of Jesse Baldwin ("Baldwin Dep.") [Docket Item 80-3] at 21:1-23:15 and Ex. P-9.) Defendants maintain that Defendants' President Mr. Kuepfer conducted his own research into VOC's and that the Eternity products contain only "Below Quantifiable Levels" of VOC's. (Kuepfer Dep. at 67:22-68:9; see also Ex. P-9 to Baldwin Dep.) The parties dispute the legal standard applicable for a product to be considered "VOC-free."

Second, the parties dispute the validity of and statements made about the "sound ratings" the FloorMuffler and Eternity products have received through the parties' and independent laboratories' testing. Plaintiff asserts that the FloorMuffler has a rating of (74) dB Impact Isolation Class (IIC) and (73) dB Sound Transmission Class (STC), the highest in the industry, and that independent testing by Plaintiff's customers confirms this. (Keane Cert. ¶¶ 18 & 20.) However, Defendants present evidence

3

suggesting that the FloorMuffler product that received the 73 and 74 sound ratings has specifications different than the final product sold in the marketplace. (Certification of Robert Kuepfer, filed June 6, 2016 ("June Kuepfer Cert.") [Docket Item 79-1] ¶ 3.)

Third, the parties dispute whether the FloorMuffler is "made in the USA," as the product's label claims. Plaintiff maintains that it only used raw materials sourced from within the United States to produce the FloorMuffler until 2015, and that when it began contracting with a supplier abroad, it revised its product labeling. (June Keane Cert. ¶¶ 23-31.) Defendants claim to have information that this foreign company has instead been supplying raw materials "for the past 2-3 years," or before Plaintiff says it changed suppliers. (Certification of Robert Kuepfer, filed April 15, 2016 ("April Kuepfer Cert.") [Docket Item 66] ¶ 4.)

Fourth, the parties dispute whether Plaintiff accurately represents its charitable giving history with the "Floors for the Cure" charity in its marketing materials. Defendants take the position that Diversified Industries has only pledged to donate $250,000 to charity, while its marketing materials misrepresent that number as a historical donation. (April Kuepfer Cert. ¶ 6.) Mr. Keane's testimony reflects that Plaintiff has committed to donating that money over a number of

years. (Deposition of Craig Keane ("Keane Dep.") [Docket Item 66, Ex. F] at 141:2-144:2.)

The parties also dispute whether representatives from each company have made misrepresentations about their competitors' product in the marketplace. Plaintiff had a relationship with Avalon, a flooring dealer, until Avalon abruptly cancelled its contract with Plaintiff's distributor and instead began offering underlayment from the Eternity line of products. Central to Plaintiff's case are allegations that Defendant Hardin, a former Diversified Industries employee who now works for Vinyl Trends, told sales representatives at Avalon Carpet and Tile that the FloorMuffler product had been discontinued, that the Eternity line of products "was the same as" the FloorMuffler, and that the Eternity line "used the same technology . . . and improved upon it by making it more 'eco-friendly.'" (Certification of Giovanna Carchidi ("Carchidi Cert.") [Docket Item 80-3, Ex. E] ¶¶ 12-24.) Defendants argue that this testimony is all inadmissible hearsay, and that Mr. Hardin has denied that he has ever been to an Avalon retail location or spoken with Avalon sales representatives directly. (Deposition of William Van Hardin ("Hardin Dep.") [Docket Item 83-2, Ex. A] 158:22-159:2.) The parties also introduce conflicting testimony on the amount of direct contact a representative with either Plaintiff or Defendant would have with a sales representative at a dealer

like Avalon, as opposed to working through a distributor like JJ
Hardin. (Compare Deposition of Kelly Morgan ("Morgan Dep.")
[Docket Item 80-3, Ex. F] at 43:2-19 with Hardin Dep. at 156:17-
158:16.)

Central to Defendants' counterclaims are allegations that
Plaintiffs' employees made false statements of fact about Vinyl
Trends and its products to suppliers Muchsee Wood Co. Ltd.
("Muchsee") and Sekisui Voltek ("Voltek") to induce those
companies to contract with Plaintiff to the exclusion of
Defendant. (See Third Amended Answer to Complaint and
Counterclaim [Docket Item 61-2] ¶¶ 18-23.) Defendants also
contend that Plaintiffs' employees have made false statements to
distributors about Vinyl Trends and its products, resulting in
the loss of Defendants' existing contract with T&L Distributing
("T&L") (id. ¶¶ 24-26) and a prospective contract with Home
Depot USA through an intermediary, Nance Carpets. (Id. ¶¶ 27-
28.) Defendants also claim that Plaintiff has created a website
that uses the word "Eternity" to divert web traffic from
Defendants. (Id. ¶ 30, Ex. A.) In response, Plaintiff points out
that Defendants have not pointed to any particular facts in the
record to support these assertions, that testimony from Mr.
Kuepfer supporting Defendants' allegations is all inadmissible
hearsay, and in particular, that deposition testimony from Mr.
Hardin contradicts Defendants' assertions regarding its actual

6

or potential relationships with Muchsee, Voltek, and Home Depot. (See Hardin Dep. at 121:5-8, 122:4 (Muchsee never stopped supplying rubber to Vinyl Industries); 127:23-128:7 (despite unusual delays, Voltek representative still promised to deliver LVT product to Vinyl Trends); 169:8-179-4 (Mr. Hardin never dealt directly with Home Depot, and instead negotiated for six months through another company, Nance Carpets).) Additionally, Plaintiff notes that the website produced by Defendants was created by a third-party, not Plaintiff, but that it still took steps to have the page removed. (Keane Cert. ¶¶ 38-43.)

## B. Procedural History

Diversified Industries, Inc. filed the instant lawsuit on October 18, 2013, alleging claims against Vinyl Trends, Inc. and William Vance Hardin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the New Jersey Fair Trade Act, N.J.S.A. 56:4-1; and common law tortious interference with contractual relations. [Docket Item 1.] Defendants filed an Answer and Counterclaim. [Docket Item 9.] Following motion practice on three rounds of proposed amendments, Defendants assert counterclaims against Plaintiff for tortious interference with contract in relation to Muchsee, Voltek, T&L, and Home Depot and an affirmative defense of unclean hands. [See Docket Items 23, 24, 33, 34, 61 & 67.]

Pending now before the Court are motions for summary judgment filed by Defendants [Docket Item 70] and Plaintiff [Docket Item 71], along with motions to seal certain documents filed in support of summary judgment briefing. [Docket Items 74 & 82.] These motions are now fully briefed and ripe for disposition.

### C. Parties' Arguments

In their motion for summary judgment, Defendants principally argue that they are entitled to summary judgment on Plaintiff's unfair competition claims under the Lanham Act and New Jersey law because Plaintiff cannot establish that any false or misleading statements were made about the VOC content of any flooring materials, because Plaintiff cannot point to any applicable legal authority that defines under what circumstances a flooring material shall be considered "VOC free." Defendants also argue that Plaintiff cannot provide admissible evidence to support its tortious interference claim against Mr. Hardin. Plaintiff argues, in turn, that it need not point to legal authority defining VOC content in order to sustain its claim, that the record contains sufficient factual matter to find that Defendants deceptively advertised their products, and that the record contains sufficient factual matter to establish that Mr. Hardin interfered with Plaintiff's relationship with Avalon Carpet and Tile.

In its motion for summary judgment, Plaintiff takes the position that there are no facts in the record to support Defendants' position that Plaintiff tortiously interfered with Vinyl Trends' relationships with Muchsee, Voltek, T&L, and Home Depot, or that Plaintiff has acted with unclean hands in this case. Defendants argue that material factual disputes over these questions preclude the entry of summary judgment.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving

9

party, and must provide that party the benefit of all reasonable inferences.  Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

## IV.  DISCUSSION

### A. Motions to Seal

First, the Court will address Plaintiff's two motions to seal certain materials filed in connection with the pending motions for summary judgment.

Under L. Civ. R. 5.3(c)(2), a party moving to seal must address four factors: "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."

Plaintiff's first motion to seal [Docket Item 74 & 86] seeks to redact and seal deposition testimony of the principals for Vinyl Trends, Robert Kuepfer and William Van Hardin, and

10

redact the name of a supplier of the raw material Diversified
Industries uses to manufacture the FloorMuffler. The second
motion to seal [Docket Item 82] seeks to redact and seal
deposition testimony of Robert Kuepfer and Jesse Baldwin, a non-
party, and the expert report of Stephen Young, Ph.D. In
response, Defendants state that they do not object to the public
filing of the testimony of Mr. Kuepfer or Mr. Van Hardin, and
that they believe that they can publicly file the name of
Plaintiff's supplier in a manner consistent with the parties'
Discovery Confidentiality Agreement and Order. [See Docket Item
20.]

   In support of its motions to seal, Plaintiff sets forth
adequate bases to seal only the name of its supplier and the
expert report of Dr. Young. The Certification of Mr. Keane
[Docket Item 74-2] adequately establishes that the revealing of
Plaintiff's supplier's name might jeopardize Plaintiff's
competitive advantage in the marketplace gained by working with
an international supplier of raw material. Similarly, the
Certification of Kerri Chewning, Esq. [Docket Item 82-1] notes
that Dr. Young's report contains references to materials marked
"Confidential" and/or "Attorney's Eyes Only" pursuant to the
parties' Discovery Confidentiality Agreement and Order.
Accordingly, the Court finds good cause to seal this
commercially sensitive information and will grant Plaintiff's

11

motions to the extent that they seek to seal the name of
Plaintiff's raw materials supplier and the expert report.
However, because Plaintiff left to Defendants to establish the
legitimate interest in sealing the relevant deposition testimony
and the injury that would result if that information were to
become public, and because Defendants do not seek protection for
the Kuepfer and Van Hardin depositions, the Court will deny
Plaintiff's motions to the extent that they seek to seal certain
deposition testimony of Mr. Kuepfer and Mr. Hardin.

## B. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on Plaintiff's claims
under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the
New Jersey Fair Trade Act, N.J.S.A. 56:4-1, and common law
tortious interference with contractual relations. For the
following reasons, the Court will deny Defendants' motion.

### 1. Unfair Competition Issues

The essence of Plaintiff's unfair competition claims under
federal and state law is that Defendants have misrepresented the
qualities of the Eternity line of products in the marketplace,
advertising that they are free of any volatile organic
compounds.[2] Section 43(a) of the Lanham Act governs claims of
unfair competition, and permits a civil action against:

---

[2] Plaintiff alleges in the Complaint that Vinyl Trends has made
other false statements or misrepresentations about the Eternity

> [a]ny person ... [who] uses ... any false designation
> of origin, false or misleading description of fact, or
> false or misleading representation of fact, which ...
> misrepresents the nature, characteristics, qualities,
> or geographic origin of ... [the] goods, services, or
> commercial activities...

15 U.S.C. § 1125(a)(1)(B).[3]  In other words, section 43(a)

provides "broad protection against various forms of unfair

---

line of products, including that the Eternity products have the
highest sound rating in the industry, that the Eternity products
are the same as the FloorMuffler, and that the Eternity products
are being offered instead of the FloorMuffler, but those
allegations are apparently not the subject of the present motion
for summary judgment.

[3] The New Jersey unfair competition law states that "[n]o
merchant, firm or corporation shall appropriate for his or their
own use a name, brand, trade-mark, reputation or goodwill of any
maker in whose product such merchant, firm or corporation
deals." N.J.S.A. § 56:4-1.  Extant authority explains that
"unfair competition claims under New Jersey statutory and common
law" mirror unfair competition claims "under § 43(a) of the
Lanham Act," as here.  Bracco Diagnostics, Inc. v. Amersham
Health, Inc., 627 F. Supp. 2d 384, 454 (D.N.J. 2009) (citations
omitted); see also Buying For The Home, LLC v. Humble Abode,
LLC, 459 F. Supp. 2d 310, 317–318 (D.N.J. 2006) (citations
omitted) ("Because the elements of a claim of unfair competition
under the Lanham Act are the same as for claims of unfair
competition and trademark infringement under New Jersey
statutory and common law, the Court's analysis below extends to
Plaintiff's state law claims as well."); J & J Snack Foods,
Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 374 (D.N.J.2002)
("[T]he elements for a claim for trademark infringement under
the Lanham Act are the same as the elements for a claim of
unfair competition under the Lanham Act and for claims of
trademark infringement and unfair competition under New Jersey
statutory and common law...."); Harlem Wizards Entm't
Basketball, Inc. v. NBA Properties, Inc., 952 F. Supp. 1084,
1091 (D.N.J. 1997) ("N.J.S.A. 56:4-1 is the statutory equivalent
of Section 43(a)(1) of the Lanham Act").  As a result, the Court
need not conduct any separate inquiry into the state law
requirements, and the Court's Lanham Act analysis extends to the
analog state law claim.

competition and false advertising," by specifically prohibiting false or misleading factual statements concerning commercial products, or "acts that would technically qualify as trademark infringement." Presley's Estate v. Russen, 513 F. Supp. 1339, 1376 (D.N.J. 1981) (citations omitted). A claim of false or misleading representations requires, in turn, allegations:

a.   that the defendant made a false or misleading statement concerning its product;

b.   that the statement caused actual deception or at least created a tendency to deceive a substantial portion of the intended audience;

c.   that the deception likely influenced purchasing decisions by consumers;

d.   that the advertised goods traveled in interstate commerce; and

e.   that the statement created a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

See Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000).

Defendants principally argue that they are entitled to summary judgment on Plaintiff's unfair competition claims because calling the Eternity line of products "VOC free" is not a false or misleading statement as a matter of law.[4] The

_____

[4] Defendants have not challenged the sufficiency of Plaintiff's evidence on the other four elements of its Lanham Act claim. Accordingly, Defendants are not entitled to summary judgment on those issues.

Environmental Protection Agency has promulgated regulations
pursuant to the Clean Air Act which prescribe permissible levels
of pollutant emissions in different consumer products. Because
the EPA's regulations do not include flooring underlayment as a
regulated product category, Defendants argue, this lack of
regulation permits Vinyl Trends to market the Eternity line of
products as "VOC free" even if it contains "below quantifiable
levels" of VOC pollutants. Essentially, Defendants appear to
take the position that because it is not against EPA regulations
to label the Eternity line of products "VOC free," that label
cannot be false or misleading.

In the Third Circuit, where a plaintiff asserts that a
competitor's advertising is false or misleading because its
claims are inadequately substantiated under federal guidelines,
a plaintiff must show not only that the competitor's claims are
false under the federal guidelines but also that the claims are
literally false or misleading in and of themselves. Sandoz
Pharma. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 229 (3d
Cir. 1990). But here, Plaintiff presents the opposite case: it
does not assert that Defendants' representations violate any
federal regulations, but instead seeks to prove that the
assertion that the Eternity line of products is "VOC free" is
false because testing shows that the products do contain some
levels of those compounds. To the extent that Defendants attempt

15

to argue that Plaintiff's Lanham Act claim is foreclosed or limited by the Clean Air Act and the concomitant EPA regulations, or that Plaintiff must invoke the EPA regulations in order to make out its claim, it has provided no support for either assertion. Nothing in the text of either statute "in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by" the EPA. POM Wonderful LLC v. Coca-Cola Co., __ U.S. __, 134 S.Ct. 2228, 2237 (2014). In fact, Defendants have not set forth a reason to find that EPA regulations should have any effect on this case at all, where the regulations themselves do not address flooring underlayment.

Additionally, Plaintiff has pointed out evidence in the record sufficient to create a factual dispute over whether Defendants' assertion that the Eternity line of products is "VOC free" is false or misleading. See Deposition of Kuepfer Dep. at 59:8-18, 67:22-68:8, 152:22-153:14; see also Baldwin Dep. at 21:1-23:15 and Ex. P-9; see also Dr. Young Expert Report [Docket Item 80-3 Ex. D]. Accordingly, summary judgment is denied as to Plaintiff's unfair competition claims.

### 2. Interference with Contract Issues

Plaintiff also brings a claim for tortious interference with contractual relations arising from Avalon's, one of Diversified Industries' retailers, decision to stop carrying the FloorMuffler and offer the Eternity line of products instead.

16

Plaintiff posits that Mr. Hardin, a former Diversified Industries employee and now Vinyl Trends' only sales representative working in the United States, told Avalon that the FloorMuffler was being discontinued and replaced by the Eternity line of products.

Under New Jersey law, to establish a claim of tortious interference with contract a plaintiff must show (1) it was a party to an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) plaintiff suffered damages resulting from the interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1992); Printing Mart-Morristown v. Sharp Elec. Corp., 563 A.2d 31, 37 (N.J. 1989). Defendants assert, without making any specific reference to the record, that Plaintiff has no admissible evidence showing that Mr. Hardin had any contact with Avalon's stores or that he made any false statements about the FloorMuffler or the Eternity line of products, and that it is relying upon only the allegations in the Complaint.[5]

To the contrary, Plaintiff points to ample evidence in the record precluding summary judgment at this point. According to

---

[5] As above, Defendants have not challenged the sufficiency of Plaintiff's evidence on the other elements of its tortious interference with contract claim. Accordingly, Defendants are not entitled to summary judgment on these issues.

Plaintiff, Mr. Hardin is the only former Diversified Industries employee now working for Vinyl Trends (Carchidi Cert. ¶ 18), that Mr. Hardin had information about the FloorMuffler's specifications from his former employment (id.), that someone in Mr. Hardin's position would have direct access to a sales representatives at a retailer like Avalon (Morgan Dep. at 43:2-19), and that Avalon sales representatives told a Diversified Industries employee that the FloorMuffler "was being discontinued and that the store was offering Eternity in its place," that the Eternity "was the same as the FloorMuffler," that the Eternity had "the highest sound rating in the industry," and that an Eternity representative was the source of this information. (Carchidi Cert. ¶¶ 12-24.)

To the extent that Defendants contest that this evidence is inadmissible hearsay, Plaintiff may be able to find non-hearsay uses for these out-of-court statements, and "the rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." Fraternal Order of Police, Lodge 1 v. City of Camden, -- F.3d --, 2016 WL 6803036, at *3 (3d Cir. Nov. 16, 2016) (emphasis in original). In particular, what matters to the viability of Plaintiff's claim is not that Mr. Hardin's representations about the FloorMuffler and Eternity line of products were true, or that Avalon representatives relayed Mr.

18

Hardin's sales pitch exactly to Diversified Industries'
employees. Rather, Plaintiff need only prove at trial that Mr.
Hardin said something to Avalon, with the intention that Avalon
cancel or fail to renew its contract with Diversified
Industries, and that Mr. Hardin's communications caused harm to
Diversified Industries – in other words, Plaintiff may need this
testimony to prove the effect Mr. Hardin's communications had on
Avalon's sales representatives. Resolution of these issues is
premature because "the context of trial" may provide
clarity. Ebenhoech v. Koppers Indus., Inc., 239 F. Supp. 2d 455,
461 (D.N.J.2002) (noting that rulings on motions in limine
"should not be made prematurely if the context of trial would
provide clarity"); Sperling v. Hoffmann–La Roche, Inc., 924 F.
Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on
the admissibility of pieces of evidence prior to trial. It is
often useful to wait to see how the trial unfolds.").
Accordingly, summary judgment is denied as to Plaintiff's
tortious interference with contract claims.

### A. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on Defendants'
counterclaims alleging common law tortious interference with
contractual or prospective relations and its affirmative defense
of unclean hands. For the following reasons, the Court will
grant in part and deny in part Plaintiff's motion.

19

### 1. Interference with Contract Issues

In their tortious interference counterclaim, Defendants claim that Plaintiff interfered with existing or prospective contracts with the companies that supply the raw materials for the Eternity line of products or the distributors and retailers who bring the Eternity products to consumers in the marketplace. As above, to prevail on a claim for tortious interference with an existing contract under New Jersey law, Vinyl Trends must prove (1) it was a party to an existing contractual relationship; (2) Diversified Industries intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) Vinyl Trends suffered damages resulting from the interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1992); Printing Mart-Morristown v. Sharp Elec. Corp., 563 A.2d 31, 37 (N.J. 1989). To prevail on a claim regarding a prospective economic relationship, Vinyl Trends must instead prove that it had a reasonable expectation of economic benefit, that Diversified Industries knew of that expectancy, that Diversified Industries wrongfully and intentionally interfered with that expectancy, that it had a reasonable probability of receiving the anticipated economic benefit but for Diversified Industries' interference, and that it was damaged because of that interference. Id. Here, counterclaimants seek relief for

20

Diversified Industries' alleged interference with existing relationships with suppliers Muchsee and Voltek and a distributor, T&L, and a prospective relationship with Home Depot. The Court will address each contractual relationship in turn.[6]

Diversified Industries takes the position that there is no evidence in the record that it interfered, intentionally or otherwise, with Vinyl Trends' relationship with Muchsee, and the Court agrees. Plaintiff points to testimony that Muchsee supplied Vinyl Trends with raw materials for its rubber business, and that it never stopped supplying that material. (See Hardin Dep. at 121:5-8, 122:4.) As Plaintiff points out, Defendants' claim that Diversified Industries contracted with Muchsee to buy "both the green [foam] and the rubber" and thereby cut Vinyl Trends off from its raw material supply is belied by the record: only Mr. Hardin's deposition alludes to this claim, and is thin on details at best. (Id. at 118:20-120:10.) While the record shows that Vinyl Trends was party to an existing contract with Muchsee for rubber, the record contains no evidence that Plaintiff made any particular

---

[6] Defendants' opposition brief addresses only the evidence in support of its prospective relationship with Home Depot. Nonetheless, the Court will still examine the record with respect to Vinyl Trends' relationship with Muchsee, Voltek, and T&L, as follows.

misstatements about the sound rating or VOC content of the
Eternity line of products or actually executed a contract with
Muchsee in order to interfere with Vinyl Trends' relationship
with Muchsee; that Plaintiff acted with malice; or that Vinyl
Trends was harmed at all, where Muchsee continued to supply
rubber to the company. See Lightning Lube, Inc., 4 F.3d at 1167.
Accordingly, Plaintiff is entitled to summary judgment on
Defendants' counterclaim for tortious interference with contract
with respect to Muchsee.

Similarly, there is no evidence in the record that
Plaintiff interfered with Defendants' relationship with Voltek
and T&L. Defendants assert in their counterclaim that Vinyl
Trends worked with Voltek, another raw materials supplier, to
create a new luxury vinyl tile ("LTV") product until Plaintiff
allegedly told Voltek not to do business with Vinyl Trends, and
that Voltek then delayed and/or refused to fulfill Vinyl Trends'
orders for LTV, costing Vinyl Trends its distributing
relationship with T&L. (Answer & Third Amended Counterclaim at
¶¶ 21-26; see also Hardin Dep. at 128:19-129:11, Kuepfer Dep. at
36:10-37:9.)

Defendants have come forward with no admissible evidence
that Plaintiff intentionally and maliciously interfered with
Vinyl Trends' contract with Voltek. At best, Mr. Kuepfer and Mr.
Hardin both testified that Shannon Damran, Vinyl Trends' contact

22

at Voltek, spoke with someone at Diversified and that "they were
told by Diversified to not sell us LVT." (Hardin Dep. at 126:13-
128:7; see also Kuepfer Dep. at 39:2-22.) Neither witness could
say when or how many times such a conversation occurred between
someone at Diversified and someone at Voltek (Hardin Dep. at
142:3-144:1; Kuepfer Dep. at 76:16-17), and Mr. Hardin conceded
at his deposition that he had no information to "correlate the
delay in the creation of the LVT to conversations anybody at
Diversified had with someone at Voltek" and that he "assumed"
Voltek's delay in delivering LVT was caused by any conversation
between someone at Diversified and someone at Voltek. (Hardin
Dep. at 143:12-15, 144:2-19.) The problem for Vinyl Trends is
the double-hearsay nature of the supposed communication between
the declarant at Diversified and the declarant at Voltek, so
there is no anticipated admissible evidence of any such
conversation at trial. This double-hearsay of a supposed
conversation between unknown declarants is an example of the
type of hearsay that cannot be considered as evidence opposing
summary judgment because it is not capable of being admissible
at trial, see FOP Lodge 1 v. City of Camden, supra, -- F.3d at -
-, 2016 WL 6803036, at *3. Furthermore, unlike Diversified's
evidence with respect to alleged interference with Diversified's
relationship with Avalon, this testimony alone does not give
rise to an inference that Diversified engaged in any culpable

conduct here. Accordingly, Plaintiff is entitled to summary judgment on Defendants' counterclaim for tortious interference with contract with respect to Voltek.

Similarly, the record is devoid of evidence from which it could be reasonably inferred that Plaintiff intentionally interfered with Vinyl Trends' relationship with T&L. Even assuming that Defendants could show that Plaintiff intentionally interfered with Vinyl Trends' relationship with Voltek, there is simply nothing in the record supporting an inference that Plaintiff intended for Vinyl Trends to lose its contract with T&L because of the delay in delivering LVT. In any event, Defendants have not addressed this issue in their brief. Because Defendants cannot possibly meet their burden of proof with respect to either the intentional interference or the malice elements of their tortious interference claim with respect to T&L, the Court will grant Plaintiff's motion for summary judgment on Defendants' counterclaim for tortious interference with contract with respect to T&L.

Finally, the Court will grant Plaintiff's motion for summary judgment with respect to Defendants' counterclaim for tortious interference with prospective economic benefit with respect to Home Depot. To prevail on such a claim, "a plaintiff must show that if there had been no interference[,] there was a reasonable probability that the victim of the interference would

have received the anticipated economic benefits." Printing Mart-Morristown, 563 A.2d at 37. Even if there are, as Defendants claim, disputed facts regarding whether Plaintiff interfered with Vinyl Trends' potential relationship with Home Depot by making false representations about the FloorMuffler product, Defendants' claim is doomed because of just that: the record shows that Vinyl Trends' relationship with Home Depot was potential at best. Mr. Hardin never interacted directly with Home Depot, and instead negotiated through another company, Nance Carpets, to sell a private label product. (Hardin Dep. at 169:18-170:17.) Mr. Hardin testified that Nance Carpets dealt with "Luther" and "Michelle" at Home Depot, but could not testify as to whether either had the authority to decide which products would be sold at Home Depot. (Id. at 176:18-177:4.) Furthermore, Mr. Hardin conceded at his deposition that Home Depot had never confirmed in writing a deal with Nance Carpets, that Nance had never sent any ordering or pricing information to Home Depot, that Nance had never communicated to him that Home Depot was on board to sell Nance products, or that Home Depot had even gone so far as to independently test the Nance product. (Id. at 177:16-179:9, 180:22-181:1, 184:19-25.) This evidence does not support an inference it was reasonably probable that Vinyl Trends would engage Home Depot in a contract to sell any flooring underlayment product. Accordingly, the Court will grant

25

Plaintiff's motion for summary judgment as to Defendants' counterclaim for tortious interference with respect to Home Depot.

### 2. Unclean Hands

Defendants also assert in the Third Amended Answer to Complaint and Counterclaim an affirmative defense of unclean hands, taking the position that Plaintiff's marketing materials for the FloorMuffler are false and misleading and should prevent it from asserting that Vinyl Trends' marketing materials are false and misleading. "In simple parlance, [the doctrine of unclean hands] merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer Cnty., 777 A.2d 19, 32 (N.J. 2001) (citation omitted); see also Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n.12 (3d Cir. 1999) (doctrine of unclean hands will deny equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities.").

Defendants specifically assert that Diversified Industries falsely advertises that the FloorMuffler is "Made in the USA," that it has a IIC 74 sound rating, that the company has donated $250,000 to the charity Floors for the Cure, and that the

company uses the word Eternity on a website that it controls.
(June Kuepfer Cert. ¶ 3; April Kuepfer Cert. ¶¶ 3-6, 11.)
Plaintiff argues that it is entitled to summary judgment on
Defendants' unclean hands defense because Defendants have come
forward with no admissible evidence that Diversified Industries
engaged in any misconduct with respect to its claims against
Vinyl Trends-—in other words, that this conduct does not have a
sufficient nexus to Plaintiff's unfair competition claims to
prevail on an unclean hands defense.

To the contrary, the Court finds that Defendants'
allegations of false advertising and misrepresentation of the
FloorMuffler sufficiently relate to Plaintiff's allegations of
false advertising and misrepresentation of the Eternity line of
products, and that factual disputes preclude the entry of
summary judgment on this defense. Defendants point to conflicts
between Mr. Keane's certification and deposition testimony on
the one hand, and between e-mails, other depositions, and
Plaintiff's website, on the other, that support these four
allegations of false advertising and misrepresentation. (See
April Kuepfer Cert. Ex. C (e-mail from Taiwanese supplier to
Vinyl Trends confirming that it shipped materials to Diversified
Industries), Ex. D at 111:8-11 (Keane Dep. confirming that Mr.
Keane was "involved" in other sound tests where the FloorMuffler
received a score below 74), Ex. E at 43:3-5 (Deposition of

27

Edward Janes [Docket Item 66] acknowledging that the FloorMuffler was tested many times and that "you cherry pick the results" to market the product), Ex. F at 141:2-144:2 (Keane Dep. explaining that Floors for the Cure donation was a pledge, not a lump sum donation).) While Plaintiff may contest the trustworthiness of some of this evidence, and the weight ultimately due at trial, it is not the province of the Court to make these determinations on summary judgment. The Court will deny Plaintiff's motion for summary judgment with respect to Defendants' unclean hands defense.

## V.   CONCLUSION

An accompanying Order will be entered.


**November 22, 2016**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge